IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02227-KAS

MARIBEL VELASQUEZ,

    Plaintiff,

v.

DILLON COMPANIES, LLC, doing business as King Soopers, Inc.,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Summary Judgment** [#37] (the "Motion"). Plaintiff filed a Response [#47], and Defendant filed a Reply [#52]. The Court has reviewed the parties' briefing, the entire case file, and the applicable law. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332. For the foregoing reasons, the Motion [#37] is **GRANTED**.

## I.    Background

According to the undisputed summary judgment evidence, Plaintiff Maribel Velasquez entered Defendant's property—a King Soopers store located in Greeley, Colorado—to purchase groceries. *Fact Table* [#52-3] ¶¶ 1, 5. She pushed her cart into the store's dairy section, parked it to the side, and began walking through the section to retrieve several items. *Id.* ¶¶ 9-11. A store associate was simultaneously working in the dairy section to restock merchandise. *Id.* ¶ 10. The merchandise was stored on a stocking cart (also known as a "U-Boat"). *Id.* ¶¶ 4, 10.

The parties provide two helpful images of the stocking cart. The first, a photograph, shows the cart's appearance at the time of the incident (although not its precise location). *Id.* ¶ 24. The second, a handwritten diagram, shows the cart's positioning within the dairy section while the associate was unloading it. *Id.* ¶ 23.



*Defendant's Exhibit D, Photograph* [#37-4] at 4



*Defendant's Exhibit D, Diagram* [#37-4] at 3

As the diagram depicts, the dairy section was located in a corner of the grocery store, where two walls of refrigerators converge at a 90° angle, rather than a traditional parallel grocery "aisle." The stocking cart was parked in the center of the walkway, vertically with the flow of foot traffic, such that shoppers could maneuver around it on either side to access the refrigerators and the dairy case.

While doing her shopping, Plaintiff walked past the stocking cart once. *Fact Table* [#52-3] ¶ 12; *Def.'s Ex. E, Surveillance Video* [#38]. She then retraced her steps to access the refrigerator directly in front of the stocking cart. *Def.'s Ex. E, Surveillance Video* [#38]. Upon grabbing her item and turning around, Plaintiff walked into the stocking cart, tripped, and fell over it. *Id.*; *Fact Table* [#52-3] ¶ 18. She sustained a serious elbow injury. *Am. Compl.* [#46] ¶¶ 29-31.

Plaintiff sued Defendant, originally bringing a Colorado Premises Liability Act (CPLA) claim, Colo. Rev. Stat. § 13-21-115, and a negligence claim. *Compl.* [#5] at 6-7. The parties later stipulated to the dismissal of the negligence claim. *Stipulated Motion* [#39]; *Am. Compl.* [#46]. Defendant now moves for summary judgment on the CPLA claim, asserting that the stocking cart was not a dangerous condition, and therefore, Defendant could not have had actual or constructive knowledge of such danger. *Motion* [#37].

## II.    Legal Standards

### A.    Fed. R. Civ. P. 56

The purpose of a motion for summary judgment is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant

3

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court resolves factual disputes and draws reasonable inferences in favor of the nonmovant. *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1168 (10th Cir. 2023). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted). A factual dispute is genuine if the evidence could enable a reasonable jury to find for the nonmoving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *Anderson*, 477 U.S. at 248, 256. When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671.

**B.     Colorado Premises Liability Act**

The CPLA provides that "[i]n any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason

of the condition of such property, or activities conducted or circumstances existing on such property, the landowner is liable only as provided in subsection (4) of this section." COLO. REV. STAT. § 13-21-115(3). "Section 13-21-115(4) outlines the respective duties that a landowner owes to trespassers, invitees, and licensees and provides that a breach of those duties may result in liability for damages caused." *Martinez v. Cast, LLC*, 569 P.3d 865, 871 (Colo. App. 2025) (internal quotation marks and citation omitted).  "A landowner owes the greatest duty of care to an invitee, a lesser duty to a licensee, and the least duty to a trespasser." *Id.*

An "invitee" is "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." COLO. REV. STAT. § 13-21-115(7)(a). The parties agree that, as a King Soopers customer, Plaintiff was Defendant's invitee. *Fact Table* [#52-3] ¶ 2. As relevant here, "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers the landowner actually knew about or should have known about."  COLO. REV. STAT. § 13-21-115(4)(c)(I).

### III.    Analysis

In its Motion [#37], Defendant asserts that the stocking cart was not a "danger" within the meaning of the CPLA. *Motion* [#37] at 3, 5-10. It was accordingly not a "danger" of which Defendant knew or should have known, as contemplated by the CPLA. *Id.* Defendant reasons that the stocking cart was not inherently dangerous because it was large, visible, stationary, commonplace within the store, and parked in an open area

allowing multiple paths of travel on either side. *Id.* Defendant further points out that Plaintiff had walked past the cart without incident before tripping on it, demonstrating that it was not a dangerous condition. *Id.* Plaintiff responds that the stocking cart was a dangerous condition and that Defendant did not take reasonable steps to protect its customers from the danger. *Response* [#47] at 5-6.

Defendant has carried its initial burden of showing an absence of a genuine dispute of material fact as to whether the stocking cart was a "danger" of which Defendant had actual or constructive knowledge. *See Adler*, 144 F.3d at 670-71. For example, Defendant's Rule 30(b)(6) representative testified that there were no similar incidents related to stocking carts in the three years preceding Plaintiff's injury. *Fact Table* [#52-3] ¶ 22; *Def.'s Ex. F*, *Parker Dep.* [#37-6] at 83:17-84:3. Further, the representative testified that employees are trained to place stocking carts so that they allow clear paths of travel. *Def.'s Ex. F*, *Parker Dep.* [#37-6] at 51:18-52:14. The representative, the employee who was stocking during the incident, and the manager on duty during the incident testified that this stocking cart was placed in a manner consistent with that training. *Fact Table* [#52-3] ¶ 26; *Def.'s Ex. F*, *Parker Dep.* [#37-6] at 80:19-82:11; *Def.'s Ex. C*, *Lozano Dep.* [#37-3] at 50:24-51:23.

Therefore, the burden shifts to Plaintiff to put forth sufficient evidence that Defendant knew or should have known that the stocking cart was dangerous such that a reasonable juror could find in Plaintiff's favor. *Anderson*, 477 U.S. at 248, 256. In assessing this question, the Court focuses on whether this cart, *as placed*, was a danger of which Defendant knew or should have known, not whether stocking carts are "per se" dangerous items. *See Welsh v. Torres*, No. 16CA1239, 2017 WL 11932361, at *3 (Colo.

6

App. Nov. 30, 2017) (unpublished opinion) ("It is not the knowledge of the *condition* . . . that gives rise to liability; it is the *danger* of which the owner actually knew or should have known.") (quoting *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 980 (Colo. App. 2007)); *see also Castillo v. Chief Alternative, LLC*, 140 P.3d 234, 238 (Colo. App. 2006) (disagreeing that a large item was inherently dangerous where no witnesses testified as such, and instead identifying *the manner in which the item was hung* as the pertinent condition). Further, the Court will not rely on Defendant's arguments concerning the open and obvious nature of the stocking cart, nor the cases Defendant cites from other jurisdictions invoking that defense, because, as Plaintiff correctly notes, it has been abrogated by the CPLA. *Vigil v. Franklin*, 103 P.3d 322, 331-32 (Colo. 2004).

To support her position that the stocking cart's placement was a danger of which Defendant knew or should have known, Plaintiff cites an expert report, the deposition testimony of the employee unloading the cart, and the deposition testimony of the on-duty manager. *Response* [#47] at 2-3, 7-8. First, Plaintiff points the Court to an expert report authored by John R. Peterson, a current undergraduate student at Columbia Southern University and former retail manager specializing in asset protection, safety, security, and loss prevention. *Pl.'s Ex. 1*, *Peterson Report* [#47-1] at 6. Assuming without deciding that Mr. Peterson's opinions would be admissible under Rule 702,[1] he opines that "[t]here are litigation cases involving trip-and-fall incidents in which U-boats and other equipment are at the center of the issue, causing the falls." *Id.* at 12. Mr. Peterson notes, "as a Safety Professional, I do not quibble over whether a case was won or lost. The data point is that a costly litigation occurred." *Id.* He cites three opinions from cases in New York and one

---

[1] The Court is aware of Defendant's Motion to Strike John Peterson [#36] in which it argues that Mr. Peterson's proffered opinions are inadmissible under Federal Rules of Evidence 403 and 702.

from Wisconsin, all issued in 2010, involving trip-and-fall incidents at other retail stores, and baldly concludes without further support, that they are evidence that "the entire industry is aware of the problem associated with leaving U-Boat carts, either empty or partially empty, in the pathway of a person who is otherwise preoccupied, distracted, or misperceiving." *Id.* at 12-13, 24. He also cites two cases involving "Kroger" in which customers apparently tripped over stocking carts. *Id.* at 13. The Court located one of those cases in its research, and in that case, the defendant prevailed on summary judgment and again on appeal. *Colvin v. Kroger Co.*, No. CA2005-07-026, 2006 WL 589381, at *3 (Ohio Ct. App. Mar. 13, 2006). Neither Mr. Peterson in his Report nor Plaintiff in her Response [#47] elaborate how these cases impute constructive knowledge to Defendant that this stocking cart, as placed, was a danger.

Mr. Peterson further baldly asserts in his report that placing stocking carts in a walkway has been "described in published standards as a dangerous condition." *Pl.'s Ex. 1*, *Peterson Report* [#47-1] at 24. Mr. Peterson appended six pages worth of "industry standards" to his report. Upon close review, the Court cannot locate a single standard that advises retailers on the best practices for placement of stocking carts during business hours. *See id.* at 29-36. Indeed, Mr. Peterson admits that stocking cart placement is "not mentioned in any textbook that [his firm] knows of without precaution" but that "anything that someone can trip over within the Services Industry is generally directed through policies and procedures to be removed from a sales floor." *Id.* at 9. Thus, the report does not pass muster in creating a genuine dispute of material fact as to Defendant's actual or constructive knowledge. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (expert reports containing only general conclusions are insufficient to overcome summary

judgment); *Welsh*, 2017 WL 11932361, at *3 (finding that a layperson's affidavit stating that someone could "easily trip" over a planter in front of the landowner's building was insufficient to create a genuine dispute of material fact as to the landowner's knowledge that the planter was a danger).

Second, Plaintiff argues that "Defendant's employee testified that he was trained to keep the U-Boat out of the pathway of customers because it could be a hazard to them." *Response* [#47]. To support that statement, Plaintiff directs the Court to page 8 of its Response to Defendant's Fact Table [#47-5]. None of the statements of fact on page 8 support her assertion that the stocking cart's placement—in the middle of a dairy section walkway rather than up against a dairy case—deviated from the training that Defendant provides its employees. *See Defendant's Fact Table* [#47-5] at 8. To the extent that Plaintiff asserts facts concerning the store's training on leaving stocking carts unattended or placing stocking carts in traditional, parallel aisles, Plaintiff does not explain how those facts are relevant here, where the cart was neither left unattended nor placed in the middle of a narrow aisle. *See Fact Table* [#52-3] ¶¶ 27-29, 32, 40. Further, several statements of fact on page 8 refer back to deposition testimony that the Court is currently unable to confirm, because Plaintiff failed to attach the cited exhibits to her Response [#47].[2]

On this record, the Court concludes that no reasonable jury could find that the stocking cart's placement was a dangerous condition of which Defendant had actual or constructive knowledge. *Delorimier v. Home Depot U.S.A., Inc.*, No. 17-cv-00380-RM-KMT, 2018 WL 9458205, at *2 (D. Colo. Apr. 19, 2018) (citing *Gregory v. Creekstone Farms Premium Beef, LLC*, 728 F. App'x 824, 826 (10th Cir. 2018) for the proposition that

---

[2] The Court ordered Plaintiff to provide the subject exhibits no later than April 6, 2026 at 12 p.m. *Minute Order* [#60]. As of the issuance of this Order, Plaintiff has not done so.

"a court may decide whether a danger was known or obvious when reasonable minds could not differ as to the conclusion"); *see also Brooks v. Wal-Mart Stores, Inc.*, 854 F. App'x 422, 426 (3d Cir. 2021) (concluding that, under New Jersey law, which imposes a similar duty of care upon landowners to their invitees, "no rational jury could determine that the aisle, shopping carts, or shoe bench at Walmart constituted dangerous conditions that presented an unreasonable risk of harm"); *Maza v. CVS Pharmacy, Inc.*, No. 23 C 14520, 2025 WL 2467502, at *1-2 (N.D. Ill. Aug. 27, 2025) (holding that, under a similar landowner liability framework, "the presence of the stocking cart in the store's aisle did not pose an unreasonable risk of harm to persons on the premises," especially where there was "2.5 feet of room available to walk around it").

But even assuming that there is a genuine dispute as to Defendant's knowledge of the danger, Plaintiff has failed to show that a genuine dispute of material fact exists on the question of whether Defendant deviated from the standard of care it owed to Plaintiff. Plaintiff asserts that, in order to exercise reasonable care, Defendant should have parked the stocking cart directly against shelving or placed signs around it. *Fact Table* [#52-3] ¶¶ 34, 38. However, the Court is not convinced that either of those solutions would better prevent tripping injuries in grocery stores, and indeed, they may create a whole new host of safety issues. *Maza*, 2025 WL 2467502, at *3 (observing that placing a warning around the cart would not be effective means to prevent the injury in question because "warnings are effective if they disclose a condition that is latent, thus providing people with information they otherwise may not have"); *see Fact Table* [#52-3] ¶ 31; *Def.'s Ex. F, Parker Dep.* [#37-6] at 82:13-83:3 (noting that parking a stocking cart directly against an

10

aisle presents a safety concern because customers might try to move the cart themselves to retrieve the merchandise behind it).

Therefore, Plaintiff has failed to show a genuine dispute of material fact as to Defendant's actual or constructive knowledge of a danger in its store danger and as to any departure from the exercise of reasonable care.

## IV.    Conclusion

For the reasons set forth above, it is **ORDERED** as follows:

- Defendant's Motion for Summary Judgment [#37] is **GRANTED**.

- The Clerk of Court is directed to enter summary judgment in this case in favor of Defendant Dillon Companies, LLC, and against Plaintiff Maribel Velasquez.

- The Final Pretrial/Trial Prep Conference set for April 13, 2026, and the Jury Trial set to commence on June 1, 2026, are **VACATED**.

- Defendant's Motion to Strike John Peterson [#36], Defendant's Motion in Limine [#53], Plaintiff's Combined Motion in Limine [#54], and Plaintiff's Unopposed Motion to Withdraw Document No. 59 [#64] are **DENIED as moot**.

Dated: April 7, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

11